## John J. Beeker and others v. Hastings and others.

*Sale of chattels: Caveat Emptor.* Complainant being owner of certain real estate in Detroit, sold the same to defendant, and received in payment therefor certain copper stock and defendant's note. Defendant directed complainant before taking the stock, to make inquiries as to its value and not to rely upon his, defendant's, estimation of it. The stock proved worthless. *Held,* that in such a case, where parties stand upon equal terms as to their opportunity of obtaining information concerning the subject matter of sale, each is bound to rely upon his own judgment and means of knowledge.

*Heard October 23d. Decided November 8th.*

Appeal in Chancery from Wayne Circuit.

The bill in this cause was filed to set aside a conveyance on the ground of fraud and inadequacy of price. It was dismissed in the court below.

The facts are stated in the opinion.

*J. P. Whittemore,* for complainants.

The bill in this case seeks to rescind the deed given to the defendants as obtained by fraud and through a bargain, " such as no honest or fair person would accept on the one part, and such as no person, not under delusion or imposed upon, would grant on the other; a transaction which shocks the conscience, and produces an exclamation."

Land, which the defendants admit in their answers was worth $1,600 cash, was sold for nothing, and the title warranted to the extent of the consideration of $2,000.

1. The consideration was so inadequate as, from that fact alone, to raise the presumption of fraud.

2. The parties were unequal. The grantees were sharp, shrewd speculators; the grantors, an ignorant German woman and her daughter, a child of sixteen years, and her son, scarcely arrived at full age, whose occupation entirely unfitted him for such a transaction. They were all but slightly acquainted with the English language and entirely ignorant of business transactions.

3. The defendants show that they have abandoned the contract on their part, which, as they claim it to be, required them to proceed and perfect the title at their own expense.

The excuse for so doing, which they allege, i. e., the non-fulfillment by Beeker, on his part, though a good answer to an action of damages on the contract, amounts to an election to rescind the contract for breach of it by the other party. It places the parties where each can recover back what has been paid, or, if nothing has been paid, simply annuls the contract.

The warranty deed can not be allowed to stand on the defendant's own showing. The prayer of the bill to annul it, and that defendants reconvey, so as to place the complainants in the same position they were before its execution, must be granted; and then, if there is any legal or equitable remedy for defendants in the case, after this deed is annulled, let them seek it where it is to be found.

*Cleveland Hunt,* for defendants.

1. There is no claim made in the bill that the grantors of the deed were idiots — even were they permitted to stultify themselves — nor more ignorant or incompetent than the average of that class of uneducated foreigners; nor does complainants' testimony show that degree of ignorance that unfits men for the transaction of ordinary business. So that no extraordinary case of incapacity being made out, this court will not take the time to weigh any nice questions of capacity or incapacity.

A Court of Equity will not measure the size of people's understandings and capacities, there being no such thing as an equitable incapacity where there is a legal capacity. — 1 *Story Eq. Jur.* § 236 *to* 238; 1 *Johns. Ch.* 351; *Redfield on Wills,* 105 *to* 133.

Capacity will be presumed, and the burden of proof

is on the complainant to show the want of it. — *Redfield on Wills*, 39, 40, *and Note*.

If the question of fraud is disposed of, the adequacy or inadequacy of the price paid for the land is also disposed of. "For courts of Equity as well as courts of Law act upon the ground that every person who is not from his peculiar condition or circumstances under disability, is entitle to dispose of his property in such manner and upon such terms as he chooses, and whether his bargains are wise and discreet, or profitable, or otherwise, are considerations not for courts of justice, but for the party himself to deliberate upon." — 1 *Story Eq. Jur.* 244, 5, 6; 1 *Cox.* 383; 5 *Vesey* 845.

Inadequacy of consideration is not then of itself a distinct principle of relief in equity.

The burden lies with the appellant on appeal, and this being a question of fact, and the testimony being conflicting, the appellant must make out a clear case of mistake in the court below. All presumptions are against him. — 1 *Barb. Ch. Pr.* 395; 4 *Eng. L. & E. p.* 3.

CHRISTIANCY J.

The decree of the court below declaring the deed void as to complainant Maria E. Braun, on the ground of her minority, not having been appealed from by her or the defendants, we are only to consider the case so far as it relates to the complainant John J. Beeker.

Complainants and their mother, since deceased, believing themselves to be the owners, and being in possession of a lot on the plat of a part of the Louis Moran farm, undertook, through complainant John J. Beeker, to sell the same. He employed an agent by the name of Gee to make the sale, but having for some time been unable to find a purchaser, he at length introduced said John J. Beeker to defendant Hastings, as a person likely to purchase. Hastings went two or three times to see the property, and the price talked

of to him was two thousand dollars, which from the evidence, we think was its full value with a good title. Before anything was concluded, Hastings got defendant Shepard to join him in the proposed purchase, and Shepard having examined the record, found complainants had no title; the deed from one Damm to the father of complainants, through which they claimed having apparently, by some mistake, entirely unexplained, described lot four instead of lot five, he or his grantor having owned the latter, but not the former. The mistake is in no way explained, nor do the circumstances appear upon which to form any opinion, whether the mistake was one of which a correction could be compelled. The father had purchased in 1850, lived upon it until his death in 1854; and complainants had continued to live thereon until 1856, when the sale to defendants was made; and it does not appear that any person had claimed title against the complainants or their father; but this is all that appears in reference to the title.

Complainants and their mother had never known or suspected any defect of title until informed of it by defendant, and were very naturally somewhat alarmed, and, as it seems became all the more anxious to sell; but defendants, after this discovery would not of course make the purchase and pay the value of the property for so uncertain a title: but (through Hastings) they offered certain copper stocks and their note or agreement to pay three hundred dollars, payable when a good title should be perfected. The result was that the complainants consented to and did receive the copper stock and this note or agreement, and executed to the defendants a deed of the property.

The bill claims the sale to be void on the ground of the fraud and imposition of Hastings, by which, as they allege, they were induced to take the stocks. But in this we are not satisfied that the bill is sustained by

the evidence. The stock, it is true, turned out to be utterly worthless. But whether the title conveyed to defendants was of much greater value, is left quite problematical upon the evidence. The complainant John J. Beeker, who did the business for himself and mother and sister, was doubtless deceived as to the value of the stocks, and probably acted imprudently in making the trade; but though a young and inexperienced German who understood and spoke the English language imperfectly and entirely ignorant of copper stocks and their value, he does not seem to have been particularly deficient in natural capacity. He was doubtless easily imposed upon, and it may be that defendant Hastings neglected the performance of a duty which strict morality may have imposed, when he failed to explain to him all he knew about the uncertain value, or want of value of the stock. Strict morality might have required him even to caution the complainant against parting with anything he considered valuable in exchange for such stock, and we may feel that he has made a bargain which a purely conscientious man ought not to insist upon; yet he stood in no confidential relation to complainants or any of them. They stood upon equal terms, except that one was more intelligent than the other. The one was seeking to sell, and the other to purchase, and each should have relied upon his own judgment or taken such advice as he deemed proper; and there was no sufficient reason why complainants should rely upon the opinions or representations of the other, either as to the value of the title conveyed by the deed on the one side, or that of the copper stock given for it upon the other. Hastings may have recommended the stock to be of greater value than he really believed it to be; yet he did not ask complainant to take it upon his estimation of its value. He handed to him these stocks (with several others which were in fact of some value)

to go and make inquiries of its value for himself. Complainant, it seems, only inquired of his own agent, Gee, who he says merely told him that he could rely upon Hastings, and that Hastings would not cheat him.

It does not appear that this was communicated to Hastings, nor is there any evidence showing combination or concert between him and Gee. It was complainant's own folly to take the stock without further inquiry. He had fair notice that he was to ascertain the value of the stock for himself. And though we may feel that defendants have made a bargain which a conscientious man ought not to insist upon holding, we can discover no ground on which we can set the sale aside for fraud in procuring the complainants to take the stock, without laying down a principle which might disturb many titles, and which would be likely to do more injury in other cases, than we should remedy in this.

But there is another branch of the case of which we have been compelled to take a different view. The deed executed by complainants and their mother on the sale was a warranty deed, containing covenants of seizin in fee, against encumbrances, and warranty, and it purports to have been made for the consideration of two thousand dollars. Yet the answers of the defendants and their own testimony leave no room to doubt that by the understanding and agreement between them and the complainants, the defendants were to take the property at their own risk with the single exception that the amount they might pay to remove the small mortgage of about eighty dollars and the expenses of perfecting the title were to be deducted from the three hundred dollars for which their note or agreement was given. It is entirely clear that this was the understanding of the parties to the transaction, and no satisfactory reason is given, nor do we see how any could be given consistent with the testimony of the defendants themselves for the execution

of the deeds with the covenants mentioned. It is evident the complainants did not understand the deed to contain these covenants, or that they were any of them to be accountable for any defect of title. They understood the English language very imperfectly and complainant, J. J. Beeker, upon whom the others seem to have relied was unable to read writing; they were ignorant of the modes of doing business of this kind. Hastings was an intelligent business man. They did not read the deed, nor does it appear to have been read or explained to them; it was prepared by Hastings himself, and they doubtless executed it in full reliance upon his fidelity and in the belief that he had drawn it in accordance with the understanding. Whether Hastings intended it, or whether it was the result of his mere carelessness, (which we are inclined to believe), the effect was a fraud upon the complainants. And if the bill had been properly drawn, making this a specific ground of complaint, the complainant John J. Beeker might we think upon the evidence have been entitled to a decree for the release of the' covenants of seizin and warranty. But the bill is silent as to this fraud or mistake; it is not, therefore, properly in issue, and we cannot therefore grant him this particular relief in this case. The decree of the court below dismissing the bill must be affirmed, with costs, without prejudice to complainants' right to bring a bill for the correction or reformation of the deed, and for a release of the covenants.

The other Justices concurred.