## MARY McARTHUR, ADM'X v. CITY OF SAGINAW.

*Municipal liability for condition of street.*

1. Municipal discretion as to how much of a street shall be set aside for the actual highway, and how much for the sidewalk, trees, gutters, etc., cannot be reviewed judicially or passed upon by a jury so long as no distinct legal duty has been violated.

2. The liability of a city for an injury caused by the condition of a street is purely statutory; and the purpose of the statute is to limit the responsibility to reasonable care.

3. The act " for the collection of damages sustained by reason of defective public highways, streets," etc., covers such defects only as are due to want of repair, and has nothing to do with the presence in the street of building material or other objects that do not affect its condition in that particular.

4. The unauthorized or excessive use of a portion of the public highway by an abutting owner in putting lumber or material thereon is a matter that falls within the cognizance of the police power, and it has nothing to do with the duty to make or repair highways.

5. A man was thrown out of his buggy and killed in consequence of striking a pile of lumber that projected over the street to the traveled part of the way but not over the latter. *Held,* that his administratrix could not recover against the municipality for his death as for an injury caused by failing to keep the street in repair and safe for travel.

| | |
|---|---|
| 58 | 357, |
| 74 | 457 |
| 74 | 462 |
| 58 | 357 |
| 79 | 285 |
| 58 | 357 |
| 82 | 484 |
| 58 | 357 |
| e136 | ²179 |
| j136 | ⁴187 |
| 58 | 357 |
| 137 | ⁵101 |
| 58 | 357 |
| 156 | ²635 |

Error to Saginaw. (Gage, J.) Oct. 16.—Nov. 4.

CASE. Defendant brings error. Reversed.

*Frank E. Emerick, Benton Hanchett* and *Albert Trask* for appellant A town is not responsible for injuries caused by defects in a street outside the traveled portion thereof: *Perkins v. Fayette* 68 Me. 152; *Kelley v. Fond du Lac* 31 Wis. 479; *Bassett v. St. Joseph* 53 Mo. 290; *Brown v. Glasgow* 57 Mo. 156; there is no common-law liability: *Moulton v. Sanford* 51 Me. 127; *Brooks v. Acton* 117 Mass. 204; nor will the town be liable if the injured person is in any way to blame : *Farnum v. Concord* 2 N. H. 392; *Clark v. Barrington* 41 N. H. 44; *Tucker v. Henniker* id. 317; *Winship v. Enfield* 42 N. H. 197; *Tuttle v. Farmington* 58

N. H. 13; *Noyes v. Morristown* 1 Vt. 353; *Rice v. Montpelier* 19 Vt. 470; *Bovee v. Danville* 53 Vt. 183; *Folsom v. Underhill* 36 Vt. 580; *Daniels v. Saybrook* 34 Conn. 377; *Hull v. Kansas City* 54 Mo. 598; *Hey v. Philadelphia* 81 Penn. St. 44.

*Tarsney & Weadock*, for appellee, cited as to liability, *Hunt v. Pownal* 9 Vt. 411; *Baldwin v. Turnpike Co.* 40 Conn. 238; *Sherwood v. Hamilton* 32 U. C. (Q. B.) 410.

CAMPBELL, J.   Plaintiff sued defendant for damage resulting from the death of Angus McArthur, claimed to have been caused by neglect to keep a city street in proper condition.   On the 5th of December, 1883, deceased came across a bridge over the Saginaw river into Mackinaw street which is a continuation of the same way, and after crossing the rails of a railway which jolted his buggy so as to throw the seat out of place, his horse ran the buggy against a pile of lumber on the left side of the way, and deceased was thrown out and killed.   The principal questions in the case related to whether defendant was guilty of any such neglect of duty as to render it culpable and responsible for the injury, and also whether deceased did not contribute by his own carelessness to the fatal result.

The case relied on by plaintiff was that deceased drove a spirited horse, but one fairly suitable for time and occasion, across the bridge and on the street, where he was frightened by an engine not very far away on the railroad, and that while he was moving rapidly forward, the pile of lumber was so far advanced into the street as to obstruct the free passage, and thus cause the collision.

It appeared by the proofs that the street in question was from one outside boundary to the other about four rods, or sixty-six feet, which is the standard for general highways. Thirty-one feet in the center had been graded and kept in order for travel, and was in good order at the time of the injury.   The sides of the road were naturally low and had not been raised as the center graded portion had been.   A sidewalk was laid from twelve to eighteen inches from the

side of the street about six feet wide. Between that and the raised grade there was a ditch or gutter, and the lumber pile in question belonged to a factory abutting on the street, and reached above the ditch to the border of the graded part of the street. The jury found that the clear portion of the street was thirty-one feet wide, which covered, according to all the testimony, the entire graded portion.

The jury undoubtedly understood from the rulings of the court, and the questions laid before them, that it was for them to decide how much of the street should be kept in condition for general travel, and they found that the entire street ought to be clear of obstructions, and it must be presumed they based their verdict for plaintiff on that idea. This was a palpable error, for there can be no doubt of the right of every city to determine what part of the nominal highway shall be devoted to the various purposes of passage, and upon such a subject the municipal discretion must prevail. It is common and entirely proper to set apart various parts of the space to sidewalks, gutters, trees and other suitable uses, and the plan adopted for such work is beyond judicial review, unless some distinct legal duty has been imposed and violated. *Larkin v. Saginaw County* 11 Mich. 88; *Lansing v. Toolan* 37 Mich. 152; *Toolan v. Lansing* 38 Mich. 315; *Detroit v. Beckman* 34 Mich. 125. In both of the latter cases the accident out of which liability was claimed to have arisen was caused by the narrowness of culverts or planking, which left a ditch beside the covering open, and liable to be fallen into. In *Brevoort v. Detroit* 24 Mich. 322, it was held that a city might leave no room for sidewalks if it saw fit, and also that it might terminate a given piece of paving before it reached a cross-street. Both of these would tend to produce inconvenience to travel, but it must rest with the city to determine for itself how far to extend its improvements. It is one of those discretionary powers necessary to good government, and the danger of abuse is not considered great enough to authorize its restriction.

Very few cities have a wider space than was left here

for the traveled track of their streets.   They are governed by considerations of expense and of private convenience in adjoining abutters, who in case of paving are generally made to bear the burden, and whose right to occupy the portion of the street not needed for the public, is generally favored to some extent, so far as the public convenience allows.

The lumber-pile in the present case was not in the nature of an encroachment or defect, but was such an object as would, if unlawfully there, be an obstruction to the use of the way, if unlawful at all.   *Grand Rapids v. Hughes* 15 Mich. 54.   So far as it prevented access to the premises of the owners, it was an evil that concerned them more directly than the public, and in the present case the deceased was not seeking access.   It was not in the traveled track as improved by the city.   If the city is liable in this action for negligence in leaving it there, that negligence consists in a failure to exercise its police power, in not having it removed, and not for failure to provide a sufficiently wide space for travel.   If the city had put the lumber there and left it, some other considerations might be presented.

The liability of cities for injuries suffered in their streets is statutory.   Our Legislature has recognized this principle, and has not made them liable except under declared conditions.   And in order to remove any possible doubt on the subject, the recent legislation, somewhat amending the details of the old law, has declared in so many words that no common-law liability shall exist.   Pub. Acts 1885, pp. 289, 291. The legislation has all been adopted in view of the decisions previously made on the subject, and is not open to serious ambiguity.   The recent amendments have substituted the word " reasonable " in some cases for the word " good," and have indicated a purpose to prevent any responsibility for more vigilance than reasonable care requires.

The statute, as found in the former volumes, and included in How. Stat. §§ 1442–1446, indicates by its title its general scope.   It is "An Act for the collection of damages sustained by reason of defective public highways, streets, bridges, cross-walks, and culverts."   Section 1, which is the section

governing this case, gives damages for personal injuries "by reason of neglect to keep such public highways or streets, and all bridges, cross-walks and culverts on the same in good repair, and in a condition reasonably safe and fit for travel." Section 4 imposes the duty "to keep them in good repair, so that they shall be safe and convenient for public travel at all times," etc. And to do this it is provided that when the means now provided by law are not sufficient to enable the municipality to keep them "*in good repair*," authority shall exist to levy such additional sum, not exceeding five mills on the dollar, as will enable them to keep such streets, etc., "in good repair at all times."

We held in *Agnew v. Corunna* 55 Mich. 428, that the statutory liability was confined to such defects in streets as arose from their being out of repair, and did not cover objects forming no part of the streets, and not affecting their condition as ways properly kept in repair. We adhere to the opinion there expressed. The whole tenor of the statute is confined to the duties of cities and towns to construct their roads and repair them when out of order. The duty is the same in regard to all of these corporations. But it is manifest that their powers and means of preventing private parties from doing what may interfere with the safety or convenience of passers-by are not at all uniform or co-extensive. These private acts may consist of temporary as well as permanent nuisances, and may cause damage by fright as well as by physical violence, and neither cities nor towns could effectually prevent them in all cases without ruinous expense and very large means. But it is always possible, at moderate cost, to keep in repair such streets as are worked at all, and that work must be done by the municipality itself in most cases, and in all cases may be, if neglected, by others. As suggested in *Agnew v. Corunna*, it is constantly permitted to abutters on streets to occupy portions of the street for longer or shorter intervals with lumber and materials. How far this may safely be done without injury to the traveling facilities of the public must be largely a matter of discretion with the city. The unauthorized or excessive use of such

privileges, when what is done does not create what is properly a defective way, is an abuse to be rectified under the police powers of the public, and does not belong to the making or repairing of ways. There is no more legal necessity for holding cities liable for the failure to enforce their police laws in favor of travelers, than in favor of many other citizens who suffer from nuisances or wrongs. The Legislature seldom imposes responsibility to individuals for that kind of municipal negligence or misconduct.

The case before us, upon the allegations, as well as proofs, makes out no corporate liability, and as it is clear that no recovery can be had, the minor questions need not be considered.

The judgment must be reversed and new trial granted, with costs of both courts.

CHAMPLIN and SHERWOOD, JJ. concurred.

MORSE, C. J. I agree with my brethren in the conclusion reached by them in this case mainly for two reasons: *First.* I think the undisputed facts show contributory negligence on the part of the plaintiff's intestate in driving in such a place a horse known to him to be wild and vicious and often unmanageable—a dangerous and unsafe animal—one that good horsemen could do nothing with when in the vicinity and hearing of escaping steam. The facts show that he had been repeatedly warned that the horse was liable to run away and replied that he thought he could manage him, thus knowingly taking the risk of the very danger that was the primary cause of his death. *Second.* That the facts and the finding of the jury in their special verdict show the street, at the place where the lumber was piled and the accident happened, to have been clear and open for the width of thirty-one feet, which, to my mind, made it reasonably safe and fit for travel, notwithstanding the encroachment of the lumber-pile.

I cannot, however, join in the proposition that a lumber-pile or any other obstacle placed in the street by the city or

by other persons, abutters or otherwise, may not be a defect in the highway under the statute. It is made the duty of cities as well as townships to keep all public highways and streets in good repair, so that they shall be safe and convenient at all times for public travel. Anything which prevents or seriously endangers public travel is a defect in the highway. A pile of lumber extending across the street, entirely blocking the way or leaving only room for one vehicle to pass, would be as much a defect as an excavation in the bed of the road would be. The highway is wanting in that safety and fitness which the law requires for the facilities of the traveling public, and is therefore defective. I cannot agree either in the idea that it makes a difference in the liability of the city if the obstacles in the street are put there without the authority or consent of the city. If abutters on the street, or other persons, put lumber or anything else in the street so as to impede necessary travel therein to such an extent as to make it dangerous to the public, and such obstructions remain there long enough to give the city notice of their presence, and an injury should occur thereby, the city, in my opinion, would be equally liable as if the obstacles were placed there by its consent. The case of *Agnew v. Corunna* 55 Mich. 428, relates to an injury caused by a horse becoming frightened at a stone lying between the traveled part of the highway and the gutter, which had been there three or four days. This was considered by the Court not a defect in the highway; and under the circumstances of the case it was not. But this decision cannot be made the foundation for the broad doctrine laid down in the opinion of the majority of the Court in the case at bar. I do not deny the right of cities to allow temporary deposits in the streets of lumber, timber, stones and other building materials for the convenience of those erecting or repairing buildings; but at the same time passage-way must be left for the traveling public, whose rights are superior in the streets to those who are building alongside of them; and the streets cannot be left, either by night or by day, in such a condition as to be unsafe and unfit for travel to accommodate anybody.

Neither do I believe that the question how far, how much and how long abutters can safely occupy the streets of a city with lumber, stone, coal, boxes, bales or other merchandise with injury to the facilities of the traveling public is a matter largely within the discretion of the city authorities, or that the unauthorized or excessive use of the privilege of so obstructing the streets is an abuse to be rectified under the police powers of the public, and does not belong to the making or repairing of ways. To my mind, a necessary portion of the street or highway, sufficient to allow the free passage of vehicles, must be left clear and open, and if by reason of obstructions placed in the street by any one and there allowed to remain by the city after notice, the street is so narrowed or closed as to cause injury without the fault of one rightfully traveling therein, the city, in my opinion, is liable for the damage occasioned thereby, under the statute providing that streets and highways shall be kept in a condition reasonably safe and fit for travel.