## City of Lancaster v. Broaddus, By, etc.

(Decided December 12, 1919.)

### Appeal from Garrard Circuit Court.

1. Municipal Corporations—Streets—Duty of City to Keep in Repair.—Cities are under a duty to exercise ordinary care to keep their streets in reasonably safe condition for public travel.

2. Municipal Corporations—Streets—Duty as to Repair of Streets in Outlying Territory.—Whether the rule that cities are under a duty to keep the whole of the street, no matter how wide or

what part of it is used by the public, in safe condition for travel should be applied to the whole of the street in small cities and towns is a question that admits of considerable doubt.

3. Municipal Corporations—Streets—Excavation Outside of But in Margin of Traveled Part—Liability of City.—Whether a city is liable to the driver of a vehicle who leaves the traveled part of a wide street for the purpose of passing another vehicle, although he could have passed without leaving it, if the vehicle drops into an excavation in the margin of the traveled part is a question for the jury.

4. Municipal Corporations—Streets—Vehicle Leaving Traveled Part —Excavation in Margin—Liability of City.—Where a small city kept in good condition a part of a street wide enough to accommodate travelers, and the driver of a vehicle left the traveled part for the purpose of passing a vehicle, although he need not have done so, and the wheels of his vehicle dropped into an excavation on the margin of the traveled part, the presence of which was hidden by weeds and grass, he was not guilty of negligence as a matter of law.

R. H. TOMLINSON for appellant.

LOUIS L. WALKER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

Hubert Broaddus, a young boy, received serious injuries when an automobile in which he was riding in company with other people on one of the streets of the city of Lancaster turned over, and in a suit to recover damages there was a judgment in his favor and the city appeals.

The machine in which the boy was riding was being driven by Joe Turner, an experienced and careful driver. When the machine was going at a speed of about ten miles an hour—not exceeding twelve—Turner discovered an approaching wagon and for the purpose of avoiding it turned his machine to his right according to the law of the road so that he might pass the wagon. About the time Turner turned his machine to the right the driver of the wagon also properly turned his team to his right so that each could pass the other with safety.

The traveled part of the street at and near the point where both vehicles were turned by the drivers to the right, and at the place where they passed each other was

covered for about fifteen feet in width with rock. Within a few feet of the place where the two vehicles passed each other there was a culvert under the street covered with rock for the same width and in the same manner as the other part of the street.

On the side of the street to which the automobile turned to pass the wagon there was an opening in the culvert, into which the water passed under the street, and at this opening or mouth of the culvert an excavation had been made between two and three feet deep and about three feet wide. This excavation was immediately at the edge or in the margin of the macadam and travel-ed part of the street; so that if the wheels of a vehicle should leave the macadam or traveled part of the street at this point as much as two or three inches they would drop into the excavation that had been made at the mouth of the culvert.

The street was about twenty-two feet wide, although only about fifteen feet of it was covered, as we have said, with metal: outside of the metal part of the street the surface of the ground for some distance from the excavation was level with the surface of the macadam part of the street or so nearly so that the wheels on one side of a vehicle could run on the metal and the wheels on the other side on the ground outside of it with safety. When the driver of the automobile turned it to the right for the purpose stated the wheels on the right side of it left the metal part of the street a few inches, with the result that when the excavation was reached one of the wheels on the right of the machine fell into it causing the machine to turn over after it had passed the excavation some ten feet.

It further appears by practically undisputed evidence that outside of the part of the street covered with metal the ground was covered with grass and weeds which had also been allowed to grow up in the excavation to such an extent that the excavation could not be discovered by the exercise of ordinary care by a traveler on the street. In other words, the excavation was completely hidden from view by the weeds and grass and presented the same appearance as did the remainder of the street outside of the metal covered part. It is further shown without dispute that there was no barrier or other object to give notice of the presence of

this excavation and that it had been in the same condition it was when the accident happened for several years, certainly more than one year.

The macadam and traveled part of the street at this point was, as we have said, about fifteen feet wide and the vehicles, without either leaving the macadam or traveled part of the street, could have passed each other with entire safety, and so if the driver of the automobile had not left the traveled part of the street the accident would not have happened.

On these facts it is earnestly insisted by counsel for the city that the accident and resulting injury to the boy were entirely due to the negligence of the driver of the machine in leaving that part of the street covered with metal; because, as argued, he could have safely passed the other vehicles without leaving the traveled portion of the street. And therefore it is said the city was not guilty of any negligence in leaving this unprotected excavation immediately by the side of and in the margin of the metal covered part of the street.

For the boy, the argument is, that the city was negligent in failing to have a barrier or other reasonably sufficient object to give warning of the fact that it would be dangerous to leave the macadam part of the street at this point, and the driver of the machine was not negligent in leaving for the space he did the traveled part of the street.

We may also here say that there is no dispute about the fact that the city had notice of the location and condition of the excavation a sufficient length of time before the accident to have taken such steps as might be necessary to give warning of its presence.

It is the settled law in this state, and for that matter everywhere, that cities are under a duty to exercise ordinary care to keep their streets in reasonably safe condition for public travel; and it is not to be doubted that if this excavation had been in the metal covered and traveled part of the street the negligence of the city would be clearly established.

Therefore the only material question is—is a city under a duty to exercise ordinary care to keep its streets reasonably safe for public travel outside of that part that is covered with metal and usually traveled when the metal covered and safe part of the street is wide

enough to accommodate the traffic and permit two ve-
hicles to pass each other with safety?

As a general rule cities and towns are under a duty
to exercise ordinary care to keep the whole of the street,
no matter how wide it is or what part of it is used by
the public, in reasonably safe condition for travel. But
whether this rule should be applied in all its strictness
to the whole of the street in small cities and towns is
a question that admits of considerable doubt. Perkins
v. Inhabitants of Fayette, 68 Me. 152, 28 Am. Rep. 84;
McArthur v. City of Saginaw, 58 Mich. 357, 55 Am. Rep.
687; Monogahela City v. Fischer, 111 Pa. St. 9, 56 Am.
Rep. 241.

Of course if the population and business of the city
and the reasonable needs of the traffic require the whole
of the street then the whole of it must be kept in con-
dition to accommodate the traffic. But we have in this
state a great many small cities and towns with popula-
tions ranging from 200 to 1,000 people, and it is a matter
of common knowledge that the streets in these munici-
palities are often wider than is necessary for the safe
and convenient use of the traveling public and that the
area of these municipalities is much greater than their
business necessities require.

As a result of this condition it is a custom in many
of these smaller cities and towns to set apart and keep
in a reasonably safe condition for public travel a strip
from fifteen to thirty feet wide covered with metal in
the center of the street, while the remainder of the street
outside of the macadam is seldom used by travelers and
not often maintained in as good condition as the traveled
part.

In view of this almost universal custom existing in
so many small cities and towns in the state, including
Lancaster, and the great expense that would attend the
improvement of the whole of all the streets, we do not
feel like laying down an arbitrary rule that would require
all these small cities and towns to keep in the same safe
condition the whole width of all their streets as they do
that portion that has been set apart for the use of the
traveling public and that is sufficient to accommodate it.

Cases illustrating the difference in the measure of
duty a city is under in respect to the safety of streets
that are in the populous and much traveled part of the

city and the streets that are in the outlying and sparsely settled territory are: City of Henderson v. Sandifer, 11 Bush 550; Neff v. Covington Stone & Sand Co., 108 Ky. 457; Sundell v. Village of Tintah, 117 Minn. 170, Ann. Cases 1913-C, 1311 and note; Smith v. City of Rexburg, 24 Idaho 176, Ann. Cases 1915-B, 276; Carlin v. City of Chicago, 262 Ill. 564, Ann. Cases 1915-B, 213; see also Thompson on Negligence, vol. 5, sec. 6008.

But passing the question as to the duty of small cities and towns to keep the whole of all the streets in reasonably safe condition for travel, we are quite sure that however small the population of the town or city may be it is under a duty to exercise ordinary care to keep not only that part of its streets that has been set apart for and is customarily used by the traveling public in a reasonably safe condition, but that it must also exercise the same degree of care with respect to such parts of its streets as lie immediately adjacent to or in the margin of the traveled part.

It often happens that the driver of a vehicle in an emergency or in passing other vehicles and while exercising ordinary care for his own safety leaves for a short distance the usually traveled part of the street, and when he does so if there is no warning of the danger and the physical appearance outside of the traveled part does not give notice that it is unsafe, he cannot be said to be guilty of such contributory negligence as would defeat a recovery if he is injured by dropping into an excavation or coming in contact with a dangerous obstruction in the margin of the beaten path that could not be discovered by the exercise of ordinary care on his part. We need not in this case say how close to the traveled road the dangerous excavation or obstruction must be to fix liability on the city. Each case must stand on its own facts.

As said in Warner v. Holyoke, 112 Mass. 362, "The law has nowhere undertaken to define at what distance in feet or inches a dangerous place must be from the highway, in order to cease to be in close proximity to it. It must necessarily be a practical question, to be decided by the good sense and experience of the jury." In commenting on this the Vermont court said in Drew v. Town of Sutton, 55 Vt. 568, 45 Am. Rep. 644, that "It seems to us that this is the only practical rule that can be

adopted; and that, as a general rule, it is for the jury to say, in the concrete case, whether the place is sufficiently near the highway to render traveling upon it unsafe unless guarded against . . ."

Here the driver of the automobile, who was proceeding at a reasonable rate of speed, thought it prudent and safe in passing the wagon to leave for a few inches the traveled part of the street, although it was not necessary that he should have done so, and when he did, the wheels of his vehicle dropped into an excavation, the presence of which was so concealed by weeds and grass as that it could not be discovered by a person using ordinary care as was the driver of this automobile.

A traveler under circumstances like these is not guilty of negligence as a matter of law. The most prudent drivers of machines and other vehicles are likely at times to deviate slightly, even when there is no occasion, from the beaten path of travel, and if they do the question whether they were negligent or not is one for the jury.

We have examined the authorities relied on by counsel for the city but they do not present facts so similar to those appearing in this case as to make them controlling.

The rule generally followed by the courts is laid down in Thompson on Negligence, vol. 5, sec. 6055, as follows:

"Another exception to the rule which limits the obligation of the municipality to repair the traveled path, and one resting not only on sound principle, but on authority, arises where there are excavations, chasms, precipices, or obstructions outside the traveled path, and so near thereto that, combining with the ordinary accidents of travel, they are liable to result in injury to the traveller, especially in the night time. Here reason and justice demand that the corporation shall remove the obstruction, or protect the traveller from it by suitable barriers or signals, or pay any resulting damages. To make a distinction between cases where the excavation is within the true line of the highway or exactly upon it, and cases where it is beyond it but close to it, presents an unworthy refinement and a judicial trifling with human life. The existence of such dangerous places, although outside the traveled portion of the

highway, or even outside the highway itself, may so endanger public travel, unless suitable guards or barriers are erected, as to raise a duty on the part of the municipality to erect such guards or barriers along the margin of the traveled portion of the highway, or even along the external portion of the highway as laid out; so that if a traveler is injured in consequence of a want of such barriers, he may have an action for damages against the municipality, although the injury in fact took place outside the limits of the traveled path. . . ."

Supporting this text are the following cases: Biggs v. Huntington, 32 W. Va. 55; James v. Trustees of Wellston, 18 Okla. 56, 13 L. R. A. (N. S.) 1219; Blankenship v. King County, 68 Wash. 84, 40 L. R. A. (N. S.) 182; Johnson v. Paducah Laundry Co., 122 Ky. 369, 5 L. R. A. (N. S.) 733; Braats v. City of Fargo, 19 N. D. 538 (1910), 27 L. R. A. (N. S.) 1169; Elam v. City of Mt. Sterling, 132 Ky. 657, 20 L. R. A. (N. S.) 512; St. Louis R. R. Co. v. Ray, —— Okla. ———— L. R. A. (1918-A) 843.

The instructions are criticized but we think they presented fairly the law of the case.

The judgment is affirmed.