[Civ. No. 4707.   Third Appellate District.—February 17, 1933.]

JOHANNA K. OLSON, Respondent, v. CHARLES R. MEACHAM, Appellant.

Charles W. Haswell for Appellant.

Joseph A. Brown for Respondent.

PLUMMER, J.—In this action the plaintiff had judgment against the defendant in the sum of $7,500 as damages for the death of the plaintiff's husband, Nels Olson, caused by an automobile driven by the defendant. From this judgment the defendant appeals.

The complaint in this action alleges that on or about the seventeenth day of May, 1931, while Nels Olson, the husband of the plaintiff, was walking westerly on the southerly side of a certain road or street known as Los Palmas Avenue

in the town of Patterson, Stanislaus County, he was struck down and instantly killed by a certain Ford truck then and there owned and being driven by the defendant, carelessly, recklessly and negligently. The plaintiff then asked for damages, and was awarded, by a jury, the sum above named.

No question is made upon this appeal that the evidence is not sufficient to support the verdict. No testimony is printed in the brief of appellant, nor as an appendix thereto, nor is any reference made to the transcript relative to the testimony, other than that relating to the introduction of certain photographs. Errors in the admission of testimony and in the instructions given by the court to the jury are relied upon only as grounds of reversal.

The first assignment of error relates to the admission of certain photographs. In support of this contention the appellant sets forth the evidence of a certain physician that there would be changes in the color of the wounds after death; in other words, while there would be no change as to the location of the wounds, they would become somewhat darker, and around the wounds the flesh would become more or less discolored.

As opposed to this testimony the respondent calls attention to the testimony of the same doctor to the effect that the location of the wounds was the same as shown in the photographs; that the matter of discoloration would not in anywise affect the photographs as showing the location thereof.

The record shows that while the defendant had twice admitted that his Ford truck struck down the deceased, the answer in this case entered a denial thereof.

The purpose of the introduction of the photographs was to prove that the Ford car driven by the appellant was the one that caused the death of Nels Olson, and this purpose is well stated in the respondent's brief as follows: "The question of whether or not it was the defendant's car that struck the deceased being in issue, plaintiff endeavored to meet this by showing, in addition to other evidence, that the wound on the leg of the deceased was in a position to lead to the conclusion it was caused by contact with the bumper of the defendant's car; that the wound on the hip was of a height that indicated it was inflicted by coming in contact with the handle of the left door, which handle it was shown had

been broken; and that the wound on the ear was caused by coming in contact with the rear outlook mirror bracket which had been broken off.'' The height on the body of the car of these particular objects was shown to be of the height of the wounds on the body of the deceased, by the testimony which was introduced in evidence, and then photographs of each particular wound were introduced in support of the theory of the plaintiff that Nels Olson's death had been caused by his body coming in contact with the projecting objects found to be broken on the defendant's car. That the photographs were clearly admissible we think is shown by the case of *Hayes* v. *Emerson*, 110 Cal. App. 470 [294 Pac. 765], where this court held that photographs of skid-marks made by automobile tires were admissible, even though the skid-marks had been covered over by paint in order to enable the photographs to be taken.

In 10 California Jurisprudence, page 896, paragraph 169, the rule is stated as follows: ''Where a photograph is shown to be a faithful representation of what it purports to reproduce, it is admissible as an appropriate aid in applying the evidence, and this is equally true whether the photograph be of persons, things or places. . . . It is for the trial court to determine whether a photograph offered is a correct representation of the object or scene in question, and its ruling will be sustained on appeal unless it is apparent that there has been an abuse of discretion.''

Even in the case of *O'Meara* v. *Haiden*, 204 Cal. 354 [268 Pac. 334, 60 A. L. R. 1381], relied upon by the respondent, the admission of the photographs was not held prejudicial error. It appears that in that case the court was of the opinion that the admission of a photograph could only have had for its purpose the augmenting of the damages sought to be recovered, but as the damages allowed were only for the sum of $10,250, for the death of the plaintiff's son, it was held that as the damages were not excessive, no injury had resulted. In the instant case, as we have stated, the damages allowed were the sum of $7,500, which certainly is not excessive for the loss of the husband, where the record shows that his annual income was the sum of $3,500.

The second assignment of error is based upon the admission of a certain criminal complaint and the plea of the defendant thereto. The record shows that the defend-

ant was arrested upon a criminal complaint containing two counts, one charging manslaughter and the other charging an assault. The count charging manslaughter was dismissed by the district attorney, and to the count charging assault, the defendant entered a plea of guilty. The count to which the defendant entered a plea of guilty is as follows: "That the said C. R. Meacham, on or about the 17th day of May, 1931, at and in the said county of Stanislaus, State of California, did then and there with a certain deadly weapon or instrument, to-wit, an automobile, which he was then and there wilfully and knowingly driving and operating without due caution or circumspection and in such a manner as to endanger the life, limb and property of other persons, and in a careless and imprudent manner, and without proper regard to the traffic, surface and width of the said highway, and during the night time, and by means and force likely to produce great bodily injury, wilfully, wrongfully, unlawfully, negligently and feloniously make an assault in and upon the person of Nels Olson, by then and there wilfully, wrongfully, negligently, unlawfully and feloniously riding, driving and operating said automobile into, against and upon the person of said Nels Olson, a human being," etc.

The record shows that at the time of the striking down of the said Nels Olson by the Ford car, Olson was walking along the left-hand side in a westerly direction on the avenue referred to, and that the defendant's car, by some means or other, was over on the left-hand side of said highway, and as charged in the complaint and by the jury, was being negligently driven on the left-hand side of the highway at the time in question. In support of this assignment of error the appellant cites a number of cases to the effect that a verdict of the jury convicting the defendant of an assault is not admissible in evidence. There is no reason to question the correctness of the decision in any of the cases referred to by the appellant, but none of the cases cited by the appellant are applicable to the circumstances here presented.

The defendant in the second count of the complaint which we have just set forth was charged with negligent driving of the Ford car. In the complaint for damages he was again charged with negligent driving. The defendant to the

criminal complaint charging negligent driving entered a plea of guilty. It is true that the complaint charged more than negligent driving. Nevertheless, it charged negligence. To this charge the defendant entered a plea of guilty. While such plea is not held by the courts to be conclusive, it is an admission on the part of the defendant, and as such is admissible in support of the allegation of negligent driving. A verdict of a jury in such cases would only be hearsay testimony, but a plea of guilty entered by the defendant is a personal admission, and as such is held admissible by all the states where the question has arisen.

In 31 American Law Reports, page 278, is a list of decisions from twenty-four different states supporting the following statement: ''An exception to the rule that a judgment in a criminal prosecution cannot be received in a civil action, to establish the truth of the facts on which it was rendered, has been held to arise where the defendant in the criminal case pleaded guilty, and the record showing such plea is offered in evidence in a civil action against him growing out of the same offense, such a record being admitted not as a judgment establishing the fact, but as the deliberate declaration or admission against interest that the fact is so; or, in other words, a solemn confession of the very matter charged in the civil action.''

The only difference in the conclusions reached by the different states is that in some of them such an admission is held to be conclusive. The court was in error, however, in permitting the attorney for the plaintiff to read the first count in the criminal complaint to which the defendant had entered a plea of not guilty, and which was subsequently dismissed, but in view of the fact that no question is raised as to the sufficiency of the evidence to support the verdict, and in view of the fact that a reading of the testimony shows beyond any reasonable question that Nels Olson came to his death by reason of the negligent driving of the Ford automobile by the defendant, it must be held that the admission of such testimony wholly fails to warrant a reversal of the judgment.

Over the objection of the appellant the plaintiff was allowed to introduce in evidence bank-books of the deceased, showing his receipts and expenditures for a period of seven years, and in support of appellant's contention that

the admission of such testimony is erroneous, cases are cited referring to prospective profits. We do not need to review the cases cited by the appellant because they are wholly inapplicable.

In addition to allowing damages for loss of society, protection, etc., the following cases show that testimony as to the earning capacity of the deceased may properly be taken into consideration in determining the amount of the verdict: *Evarts* v. *Santa Barbara R. Co.*, 3 Cal. App. 712 [86 Pac. 830] ; *Bonneau* v. *North Shore R. Co.*, 152 Cal., at page 413 [93 Pac. 106, 125 Am. St. Rep. 68] ; *Peters* v. *Southern Pacific Co.*, 160 Cal., at page 70 [116 Pac. 400] ; *Diller* v. *Northern Cal. Power Co.*, 162 Cal., at page 536 [123 Pac. 359, Ann. Cas. 1913D, 908]. Other cases might be cited, but these are sufficient.

At the request of the plaintiff the court instructed the jury as follows: "It is negligence as a matter of law to violate a provision of the law, and therefore, if you believe from the evidence that the defendant Meacham violated the law by driving on the southerly or left-hand side of the road in a westerly direction, in the absence of any necessity therefor, then in such case it is your duty to find that the defendant Meacham is guilty of negligence." Here, again, the appellant supports its contention of error by the citation of cases which are inapplicable.

A reference to the case of *Lawrence* v. *Southern Pacific Co.*, 189 Cal. 434 [208 Pac. 966], one of the cases upon which the appellant relies, shows that the instruction given by the court in the instant case is readily distinguishable from the instruction condemned in the cases relied upon by the appellant. In the Lawrence case, in addition to stating what was negligence, the court instructed the jury that the defendant was liable for all damages sustained by the plaintiff, etc. There is nothing of that kind in the instruction which we have just quoted. There is nothing in that instruction which fixes the liability upon the defendant. It simply states that a violation of law constitutes, under certain circumstances, negligence. In this case, driving on the wrong side of the road when there was no necessity therefor constituted negligence. Nor is there anything in the instruction given in the instant case comparable to the instruction

given in the case of *Starr* v. *Los Angeles R. Co.,* 187 Cal. 270 [201 Pac. 599].

At the request of the plaintiff the court gave to the jury the following instruction, which is assigned as prejudicially erroneous, to wit: ''You are instructed that it is the law of this State that a person operating a motor vehicle upon a public highway is required to remain on the right-hand side of the roadway in the direction being traveled; therefore, I instruct you that if you believe the vehicle in question, at the time and place in question, was being operated by the defendant, Charles R. Meacham, in a westerly direction, it was his duty to keep to the right hand, or northerly side of the road; that if you believe he drove to the southerly side of the road westerly bound, without legal cause, such act may be considered by you in determining whether or not said Meacham was negligent; that if you find he was negligent, and such negligence was the proximate cause of the death of deceased, Nels Olson (without contributory negligence on his part), then plaintiffs are entitled to a verdict for such sum as under the evidence you may find them entitled to receive.'' The alleged error consists in the use of the words ''without legal cause''.

Section 122 of the California Vehicle Act, at the time of the occurrences herein considered, read as follows: ''Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway and close to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway, and except when overtaking and passing other vehicles,'' etc.

The highway upon which the defendant was driving, and where Nels Olson met his death consisted of an oiled portion 16 feet wide with gravel shoulders 3 feet 3 inches on each side, giving a driving width of $22\frac{1}{2}$ feet. The record shows that the deceased was struck down while walking along the graveled portion on the southerly side of Los Palmas Avenue at the time of his death, drawing a small hand-wagon. The deceased was not upon the oiled portion, which gave the defendant, if driving carefully, sufficient room to pass by the deceased without injuring him. The record does not show any obstruction on the right-hand side of the highway, where the defendant's car should have been. Under these

circumstances we do not very well see how the use of the words "legal cause" can be held to be prejudicial, as the jury understood, and as we must hold it to be common knowledge, all jurors understand from the common use of automobiles, that the words "legal cause" simply meant what the law requires of a driver of an automobile, to keep on the right-hand side except when there are obstructions which render it impracticable so to drive. There is nothing in the record indicating that it was impracticable for the automobile which the defendant was driving to have traveled upon the right-hand side of the highway. The body of the deceased was found lying a few feet south of the south shoulder of the improved highway, showing that the automobile which ran him down was not only on the wrong side of the highway, but was traveling partly on the south shoulder.

While no contention is made concerning the sufficiency of the testimony to support the verdict, we may add that the record shows that the breath of the defendant immediately after the accident was impregnated with the odor of alcohol. The defendant himself admitted that earlier in the day he had had two drinks of whisky. The record also shows that on the morning after the accident, the defendant's automobile was taken by his wife and son to the city of Stockton, and repairs there made to the damaged portions which we have mentioned. The jury, of course, in common with all others, was well aware that the city of Modesto is geographically much closer to the town of Patterson than the city of Stockton.

The appellant also complains of the following instruction given to the jury at the request of the plaintiff, to wit: "You are instructed that a pedestrian is not necessarily under legal duty to look back or watch behind to see whether he or she is in danger of being struck or run down by any vehicle approaching him or her from the rear."

Section 150½ of the California Vehicle Act requires pedestrians on the highway to walk along the left-hand side and near the outer edge. The deceased was not only where he had a legal right to be, but where the provisions of the California Vehicle Act required that he should be.

In *Devecchio* v. *Ricketts*, 66 Cal. App. 334 [226 Pac. 11], this court had under consideration the rights of pedestrians

before the adoption of the section of the California Vehicle Act which we have quoted. We there said: "A pedestrian walking along a public highway is not guilty of contributory negligence as a matter of law because of failure to look behind him and discover an approaching car which may heedlessly run him down."

In *Rinker* v. *Carl*, 102 Cal. 436 [283 Pac. 317], a case involving the crossing of a highway by a pedestrian, where he was run down by an automobile being driven on the wrong side thereof, this court said: "Under these circumstances it is now well established that it is not contributory negligence as a matter of law for one crossing a paved highway from the south to the north, not to look to the left or to the west after reaching the medial line; that the rules of the road require eastbound traffic to travel on the southerly half and westbound traffic on the northerly half, and it is the duty of the pedestrian when he reaches the southerly line walking northerly, to look to the right and safeguard himself against stepping in front of a westbound automobile."

In *Towne* v. *Godeau*, 70 Cal. App. 148 [232 Pac. 1010], where a similar question was involved, the court held: "That a plaintiff had a right to assume that no automobile driver would run him down from the left, or what, under the circumstances of that case, would be driving an automobile on the wrong side of the street."

To the same effect is the case of *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [239 Pac. 709, 713, 41 A. L. R. 1027]. It was there held that a pedestrian had a right to travel anywhere upon the highway, the law requiring a pedestrian to travel on the left-hand side having been incorporated into the California Vehicle Act at a later date. The opinion of the Supreme Court, however, used the following language as supported by the cases which we have cited, to wit: "Nor is a pedestrian under legal duty to look back and watch behind him to see whether he or she is in danger of being struck down by any vehicle approaching him from the rear." This is conceived to be the law when a pedestrian is walking on that portion of the highway designated for him by section 150½ of the California Vehicle Act.

In addition to what we have said, the jury was very fully instructed as to the doctrine of contributory negligence. In

fact, the jury was far more fully instructed on the subject of contributory negligence than the circumstances required. Seventy-two instructions were given by the court to the jury, of which twenty referred to the doctrine of contributory negligence. The only criticism called for in view of the number of instructions given on the subject of contributory negligence is that, with the addition of a few lines to one of them, nineteen others could have been omitted without any prejudice to the defendant.

With no contention made that the evidence is insufficient to support the verdict, nor that the judgment is excessive, section 4½ of article VI of the Constitution would prevent a reversal, even though all of the appellant's contentions were admitted to be good. None of them, however, are tenable.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 18, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1933.