[S. F. No. 14815. In Bank.—May 1, 1933.]

H. B. HOPKINS, Appellant, v. GALLAND MERCAN-TILE LAUNDRY COMPANY (a Corporation) et al., Respondents.

* Walter E. Dorn and Vida M. Jones for Appellant.

O'Connor, Fitzgerald & Moran for Respondents.

THE COURT.—In order to give a more thorough consideration to the questions of law presented by the petition herein than it was possible under our system to give to them at the time the petition for hearing was first before us, this cause was ordered before us for further consideration and examination. Our further consideration of the case has led us to the conclusion that the decision of the District Court of Appeal, First District, Second Division, Sturtevant, J., writing the opinion of the court, has correctly applied the law to the facts of the instant case, and its conclusion should be determinative of the case. We have adopted said opinion as the law of the case, and herewith republish it as a decision of this court. We might add to the matters therein stated that there is no pedestrian lane or crosswalk marked upon Stockton Street, or anything that could be said to constitute an invitation to pedestrians to cross from the westerly sidewalk of Stockton Street at the point where the exterior lines of Campton Alley would intercept Stockton Street if projected westerly. If Campton Alley be regarded as extending across Stockton Street and to its westerly line, it would cut a short block into halves. The distance to the intersection of Stockton Street with either Post or Sutter Streets, where regular

stop signals are maintained, is short and the physical situation, as disclosed by the facts, was sufficient to apprise a person of ordinary caution that he was assuming a hazard in undertaking to cross Stockton Street at the point where the unfortunate injury occurred.

We are of the view that the opinion deals with the situation in a reasonable and practical manner in the light of all the elements which are to be weighed and considered in determining the question of negligence as regulated by our modern traffic laws. The decision of the District Court of Appeal follows:

"The plaintiff commenced an action to recover damages for injuries suffered in an automobile collision. The action was tried before the trial court sitting with a jury. At the end of the defendants' case the defendants made a motion that the jury be directed to bring in a verdict in favor of the defendants. They based their motion on three grounds, one of which was the contributory negligence of the plaintiff. Confining its order to the ground last stated the court granted the motion and the jury returned a verdict in favor of the defendants. From the judgment entered on the verdict the plaintiff has appealed and has brought up a bill of exceptions.

"The accident happened in Stockton street between Sutter and Post in San Francisco. Stockton street runs north and south. Grant avenue is parallel to Stockton and is the next street to the east. Between Grant avenue and Stockton there is an alley known as Campton place. On the 30th day of November, 1929, the intersections of Sutter and Stockton and Post and Stockton were under such traffic regulations that the traffic during alternating periods was allowed to pass and then to stop. At about half past 8 in the morning of that day plaintiff left his hotel to go to a laundry. He passed along the west sidewalk of Stockton street toward the south until he arrived at a point directly opposite Campton place. He then started to cross Stockton toward the right-hand sidewalk of Campton place leading from Stockton to Grant avenue. At the same moment the defendants' truck which had been standing near the sidewalk opposite the western end of Campton place started to back. As it did so it hit the plaintiff, causing the injury complained of. It was stipulated that the terri-

tory where the accident happened was located in a central traffic district. The defendants introduced in evidence ordinance No. 7691, which was then in full force and effect. That ordinance provides that no pedestrian shall cross a roadway other than by a crosswalk when within the central traffic district; that a roadway is that portion of a street between the regularly established curb lines; that a crosswalk is that portion of a roadway included within the prolongation of curb and property lines and street intersections; that an intersection is the area embraced within the prolongation of the property lines of two or more streets which join at an angle; that an alley is a street with a roadway less than twenty feet and that a street is the roadway set apart for public travel except alleyways. The defendants called as a witness a certain engineer from the city engineer's office, who testified that he had recently measured Campton place and that at the easterly property line of Stockton street the width was 19 feet 4 inches; that 50 feet east of that point the width was 19 feet 8 inches; and 100 feet east of that point the width was 19 feet 5 inches. ■ If ordinance No. 7691 is a valid enactment it follows that at the place where he was injured the plaintiff was there in violation of the terms of the ordinance and that he was guilty of contributory negligence as a matter of law. ■ But the plaintiff contends that the ordinance is unreasonable and void. In that connection he argues that a pedestrian cannot know the intersection he is entitled to cross unless he carries a yardstick and first measures it. It will be conceded that the argument is forceful. However, the defendants reply that the use of measurements of distance in regulatory enactments on the subject of traffic regulations is not unusual but quite common. They might also add quite necessary. Continuing, they enumerate other enactments, both civil and criminal, in which certain measurements are adopted regarding the dimensions of buildings, the value of property, and the weights of articles. It is not claimed that Campton place is the only thoroughfare in San Francisco that is less than 20 feet in width. On the other hand, it is stated in the briefs that there are hundreds of similar intersections. ■ In passing on the validity of an ordinance or a statute it will be presumed that it is valid. He who would

claim that it is invalid must assume the burden of showing its invalidity. (42 C. J. 623.) Neither party cites an authority that is directly in point. In the time we have had to investigate the subject we have not found one. However, cases are numerous that are very helpful. In the case of *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365 [47 Sup. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016], the court was called upon to pass on the validity of a zoning ordinance. It was claimed that the zoning ordinance enacted by the village of Euclid was unreasonable. By the terms of that ordinance it applied or did not apply according to numerous measurements of length, breadth and height. Commencing on page 386 the court said:

" 'Building zone laws are of modern origin. They began in this country about twenty-five years ago. Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobile and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise. But although a degree of elasticity is thus imparted, not to the *meaning*, but to the *application* of constitutional principles, statutes and ordinances, which, after giving due weight to the new conditions, are found clearly not to conform to the Constitution, of course, must fall.'

"In the case of *Snyder* v. *Campbell*, 145 Miss. 287 [110 So. 678, 49 A. L. R. 1402], the supreme court of Missis-

sippi was called upon to pass on the validity of the provisions of the traffic ordinance of the city of Laurel. That ordinance provided that crosswalks would be marked at certain intersections and that it was unlawful for pedestrians to cross the marked streets at other places. It was contended the ordinance was unreasonable. The court cited the Euclid case, quoted from it, and held the ordinance to be reasonable.

"In the case of *People's Rapid Transfer Co.* v. *Atlantic City*, 105 N. J. L. 286 [144 Atl. 630], the court was called upon to consider an ordinance which prohibited certain auto busses from driving on or using certain streets at any time. There, as here, it was claimed that the ordinance was unreasonable. However, after a careful consideration of the authorities, the court held that the attack was not well founded.

"In *Village of Wonewoc* v. *Taubert*, 203 Wis. 73 [233 N. W. 755, 72 A. L. R. 224], the supreme court of Wisconsin was considering an ordinance which required automobiles to be parked on the center line of the street. It was claimed the ordinance was unreasonable. On page 757 the court quoted as follows: 'The plaintiff's contention, when reduced to its last analysis, is that, under this act of the legislature, all automobile owners and drivers are given full license to stop their cars upon the public streets when and where they please and for such a length of time as suits their pleasure and convenience, and to leave them standing there, though to the great prejudice and inconvenience of the general public desiring to use the streets for their primary purposes; and the city whose duty it is to keep the streets open and free from nuisance, is rendered as helpless as the shackled prisoner at the bar. The mere statement of the proposition is its own answer.'

"The very subject-matter of a traffic ordinance of necessity deals almost solely with courses and distances. Witness the testimony in every action based on a collision of automobiles. The regulation of traffic is itself a compilation of certain regulatory measures regarding courses and distances. (California Vehicle Act, secs. 106, 107, 109, 113, 127, 128, 136, 138, etc.) The necessity of carrying a yardstick is no more burdensome with reference to one regulation than with reference to another regulation. Counsel

cite us to no method of regulation that is more reasonable. None occurs to us.''

The judgment is affirmed.

Rehearing denied.