[Civ. No. 9596. First Appellate District, Division One.—December 27, 1935.]

LEO C. SCALF, an Incompetent, etc., Respondent, v. FRANK EICHER et al., Appellants.

James H. Phillips, Elliott Johnson, Cooley, Crowley & Supple and Louis V. Crowley for Appellants.

Carl Appelbaum, Lewis N. Mitchell and Appelbaum & Mitchell for Respondent.

Stearns, Luce, Forward & Swing, Fred Kunzel, Adam Thompson and Renwick Thompson, as *Amici Curiae* on Behalf of Respondent.

WARD, J., *pro tem.*—Leo C. Scalf, an incompetent, by Virginia E. Scalf, his guardian *ad litem*, brought this action against defendants to recover damages for the death of Leo Howard Scalf, a minor, the son of the incompetent and his guardian *ad litem*. The transcript of evidence shows the following state of facts: San Leandro Street is a public street running in a general easterly and westerly direction in the city of Oakland. There are no intersecting streets entering San Leandro Street between Eighty-fifth Avenue on the east and Seventy-seventh Avenue on the west for a distance of approximately two thousand feet. There is no accepted sidewalk and no demarkation of sidewalks by curb lines. The width of the street is fifty feet. Thirty feet of the street is surfaced with metal macadam. On each side of the paved portion of the roadway are dirt and graveled shoulders. No place for pedestrians to walk is provided, but the workers in nearby canneries use the improved portion of the highway in going to and from their places of employment.

On the date of the accident the deceased, about fifteen years of age, in company with Joseph Caruso, also a minor, had been gathering firewood in a field near by to San Leandro Street. The boys pulling and shoving a play wagon entered the street and walked along their left side of the road for

a distance of about two hundred feet, at which point they crossed the road and proceeded on their right side of the highway on the shoulder thereof for a distance of four hundred feet. There was no light or warning sign attached to the play wagon. It was "dusk or dark or getting dark". At the same time and place an automobile owned by the defendant Eicher, who was riding therein, and driven by defendant Moseley was proceeding in a westerly direction on the right-hand side of the highway, with headlights on, either fully or with dimmers. The headlights of a passing automobile proceeding in the opposite direction "blinded" the driver of the Eicher car. Just what happened is not clear from the contradictory statements in the evidence except that the Eicher automobile hit the deceased and his companion and proceeded about three hundred feet on the right shoulder of the highway before it came to rest with its right front wheel in a ditch to the north of the shoulder of the road. The minor Caruso was injured, and the Scalf boy died shortly after as a result of the impact. The small wagon was demolished and the firewood scattered on the north shoulder, the paved portion of the road and in ditches near by. There was glass and debris found indicating that the impact had taken place on the dirt shoulder on the north side. It was stipulated that the accident occurred outside of a business or residence district. There is no dispute concerning any fact which is essential to the determination of the major questions here presented, namely, was the deceased guilty of negligence which contributed proximately to the accident, and if so, was the act or omission of the deceased contributory negligence as a matter of law. We find no contention in appellants' briefs that the driver of the car was not negligent, and we therefore proceed to a consideration of this case upon the assumption that the driver of the car was negligent. The evidence was ample to justify the conclusion that defendant Moseley was the agent of the defendant Eicher, and if this case should be retried the pleadings should be amended to conform to the proof.

Section 150½ of the California Vehicle Act (Stats. 1929, chap. 253, sec. 66, p. 546) provides: "It shall be unlawful for any pedestrian to walk along and upon any highway outside of a business or residence district otherwise than close to his left-hand edge of the highway." Section 21 of the same act defines a highway as follows: "Every highway, road,

street, alley, lane, court, place, trail, drive, bridge, viaduct or trestle laid out or erected as such by the public or dedicated or abandoned to the public, or intended or used by or for the general public, except such portions thereof as are used or prepared for use by pedestrians as sidewalks.'' Connected with the part of San Leandro Street referred to in the pleadings and in the evidence, there was no sidewalk and no portion of the highway ''prepared for use by pedestrians as sidewalks''.

■ A pedestrian and a driver of a vehicle have equal rights to the use of a highway, subject to the exercise of due care and caution and in accordance with the provisions of any statute or ordinance. The *locus* of the accident in this case was outside of a business or residence district and it was incumbent therefore upon the deceased to walk ''close to his left-hand edge of the highway''. ■ Appellants ·contend that ''edge of the highway'' means the extreme side of the portion of the area of land dedicated as a highway. The topography of San Leandro Street near the scene of the accident, as described by witnesses, is sufficient refutation of this contention. The construction given to the meaning of words and phrases used in ever changing, and necessarily changing, traffic rules should be reasonable and practical. The evidence reveals the fact that the extreme border lines of this highway are covered with grass and weeds, and on the north side there is a ditch. The photographs of the scene of the accident, made a part of the transcript on appeal, indicate that walking in the ditch or through weeds would be not only inconvenient and unsuitable, but rather hazardous, particularly to one pulling or shoving a small wagon loaded with firewood.

■ Section 150½ of the California Vehicle Act is applicable to highways outside of a business or residence district. When read in conjunction with section 21 of the same act, pedestrians must use a portion of the highway prepared for the use of pedestrians. If there is no pathway or lane or sidewalk so used, then the pedestrian may walk on his left-hand edge of the portion of the highway used by vehicles. The following citations submitted by appellants are not in point. In *Corcoran* v. *Pacific Auto Stages, Inc.,* 116 Cal. App. 35, 38 [2 Pac. (2d) 225], the court found the evidence disclosed that the accident occurred in a business or residence district, and section 150½ of the California Vehicle Act was not applicable. *Catton* v. *Kearns,* 123 Cal. App. 94, was a

"crossing" case in which the court held at page 97 [10 Pac. (2d) 1036, 1037]: "The requirement that a pedestrian proceed 'close to his left-hand edge of the highway' is not very well applicable to a person crossing the road" and reversed the judgment for the reason that an instruction embodying section 150½ of the California Vehicle Act was improper in view of the pleadings and evidence.

■ Respondent contends that section 150½ of the California Vehicle Act applies only to the paved, improved or main traveled part of the highway, and particularly so within the limits of a city where no means of walking is provided other than the dirt shoulder. We cannot approve of this theory. Section 150½ is not limited to districts within or without city limits. It simply provides that it must be "outside of ·a business or residence district". ■ The word "highway" as used in various statutes and ordinances may have a meaning somewhat different, depending upon the purpose of the provision of the law. Under sections 2618 and 2620 of the Political Code, a highway is a road, street, etc., of a width of at least forty feet. The purpose of these sections is to define the requisites necessary for the dedication of land as a highway. When used in the California Vehicle Act, the word "highway" has specific reference to a way or place of whatever nature open to the use of the public for travel. When used in section 122 of the California Vehicle Act in reference to driving on the right side of the highway, close to the edge or curb, it has reference to the paved or traveled portion of the roadway, close to the curb if possible, and otherwise, close to the edge of the main or frequently traveled portion of the road. In the present case, to have driven the car on the extreme right side of the road would have forced the driver to place one wheel in a ditch. In section 136 of the California Vehicle Act a driver is prohibited from parking, with certain exceptions, on the paved or improved or main traveled portion of the highway when it is practicable to park the vehicle off the main traveled path. This means that if there is a portion of the highway not frequently traveled, such portion is to be used if it can be done with safety. In many instances such part of the highway is a shoulder, and necessarily a portion of the highway. The legislature in enacting section 150½ of the California Vehicle Act undoubtedly had in mind that a pedestrian could walk on his

left-hand edge of any portion of a highway that was available and suitable for walking purposes, with due regard for the safety of the pedestrian and traffic generally. We must conclude that the deceased, in walking on the shoulder, was using the "highway" as that word is employed in section 150½ of the California Vehicle Act.

The section provides that it "shall be unlawful for any pedestrian to walk along and upon any highway . . . otherwise than close to his left-hand edge . . . " The evidence in this case shows without conflict that the deceased was on his right-hand side of the shoulder of the highway, and under the provisions of the section, unlawfully so. The purpose of the section is that the pedestrian may have the benefit of seeing an oncoming vehicle and take such action as may be necessary for his own safety. The provisions of the section protect a pedestrian from the quiet approach of a vehicle, or the confusion that may arise from the noise of the mechanism of a vehicle approaching from the rear. A pedestrian who does not walk on his left-hand edge of the road is not availing himself of every reasonable precaution for his safety. In *Olson* v. *Meacham,* 129 Cal. App. 670, the record shows that the deceased was struck down while walking along the graveled portion on his left side of the highway, and the court said at page 678 [19 Pac. (2d) 527]: "Section 150½ of the California Vehicle Act requires pedestrians on the highway to walk along the left-hand side and near the outer edge. The deceased was not only where he had a legal right to be, but where the provisions of the California Vehicle Act required that he should be."

Counsel for respondent relies upon *Silvey* v. *Harm,* 120 Cal. App. 561, wherein at page 568 [8 Pac. (2d) 570] the court said: " . . . the dirt shoulders adjacent to the paved portion of a highway are not deemed to be a part of the main traveled portion of the highway, under such circumstances as exist in this case". The court in the Silvey case was construing the phrase "main traveled portion of a public highway" as distinguished from the infrequently used portion of the highway. In the Silvey case the court also said: "The shoulders are used to serve in emergencies or during congested traffic." In *Coughman* v. *Harman,* 135 Cal. App. 49 [26 Pac. (2d) 851], there was no well-defined shoulder; the gravel forming part of the property of a service station had been spread right up to

the paved portion of the road. In that case the decedent was actually on the premises of the service station, which constituted no part of the roadway. The court held that the right of way does not extend to the entire width of the highway belonging to the state. This view is in consonance with the opinion herein expressed as applied to the facts of this case.

*Highland* v. *Chas. H. Lilley Co.*, 175 Wash. 507 [27 Pac. (2d) 693], is cited by respondent. A Washington statute forbids automobiles from running off the main traveled part of the highway except for certain purposes. In the Highland case the pedestrian was walking along the shoulder of the road. On appeal the court said: " . . . this court is committed to the doctrine that the statutory duty of a pedestrian", as prescribed by statute, "has relation to the paved or main traveled portion of the highway. . . . Clearly, subdivision 6 does not apply to a pedestrian walking on the shoulder where vehicles are forbidden to travel." (*Highland* v. *Chas. H. Lilley Co., supra.*)

There is no statutory provision in California prohibiting the use by vehicles of the dirt portion or graveled part of the highway. The use of the word "otherwise" in the California statute, which does not appear in the Washington statute, makes it plain that it is unlawful in this state for a pedestrian to walk along a highway in any manner except "close to his left-hand edge of the highway". In walking upon the right shoulder of the highway decedent violated the law. This violation was negligence *per se*. Unless the violation of the law approximately contributed to the death of decedent it would be immaterial. Whether or not the violation of the law proximately contributed to the death was a question of fact for the jury to determine.

The court gave the following instruction: "I instruct you that although it is provided by the law of this state that it is unlawful for a pedestrian to walk along and upon any highway outside of a business or residence district otherwise than close to his left-hand edge of the highway, yet this provision of the law has no application to a pedestrian who is walking on the graveled or dirt shoulder portion of the road on his right-hand side which is not part of the paved, improved or main traveled part of the highway used by motor vehicles. And where there is a graveled portion or dirt shoulder on the

right-hand side of the highway, other than the paved, improved or main traveled portion of the highway used by motor vehicles, a pedestrian has the right to walk upon such portion of the road and has equal rights with the driver of an automobile so far as such portion is concerned, and the driver of an automobile who runs or drives his or her machine off of the main traveled portion of the highway onto the graveled portion where a pedestrian is walking, is bound to exercise reasonable and ordinary care to avoid striking such pedestrian.'' Therein the jury was instructed that the decedent had the right to walk on the graveled portion or dirt shoulder on his right-hand side of the highway. This assumed a right in fact as well as in law. The instruction was erroneous and evidently was predicated upon the trial court's conclusion that a shoulder is not part of the vehicle traveled portion of the highway. The instruction was not cured by the instruction embodying the language of section 150½ of the California Vehicle Act or by other instructions given. The complained of instruction was not a correct statement of the law and was prejudicial to the rights of the defendants. (*Olson* v. *Meacham, supra.*) In *Gayton* v. *Pacific Fruit Express Co.,* 127 Cal. App. 50, 62 [15 Pac. (2d) 217], the trial court instructed the jury that the deceased had a right to travel on foot on the right-hand side of the road. On appeal the court held: ''This took away from the jury consideration of the question of whether or not this negligence *per se* of the deceased, if any, contributed to his death.'' For the reasons stated heretofore this cause must be reversed.

Appellants contend that a reversal is not adequate under the facts and the law, but that judgment should be entered for the defendants, and call attention to *Hopkins* v. *Galland Mercantile Laundry Co.,* 218 Cal. 130 [21 Pac. (2d) 553], a case in which a plaintiff pedestrian violated an ordinance providing that no pedestrian shall cross a roadway, when within the central traffic district, etc., other than by a crosswalk. There was near the scene of the accident no pedestrian lane or crosswalk or anything that could be said to constitute an invitation to a pedestrian to cross the street. Plaintiff was an adult and '' . . . the physical situation, as disclosed by the facts, was sufficient to apprise a person of ordinary caution that he was assuming a hazard in undertaking to cross Stockton street at the point where the unfortunate injury

occurred''. (*Hopkins* v. *Galland Mercantile Laundry Co., supra.*) In the Hopkins case the pedestrian placed himself in a position behind a truck where the driver could not see him. The truck backed into the plaintiff. A perusal of the transcript of evidence in that case indicates that the act of plaintiff was the sole proximate cause of the accident.

In the present case it was possible to see the boys, and if the automobile had remained on the right-hand paved side of the highway the accident would not have occurred. ▮ Young Scalf was not available as a witness. Plaintiff therefore was entitled to rely upon the presumption that the decedent had taken ordinary care of his own concerns. (Code Civ. Proc., sec. 1963, subd. 4; *Smellie* v. *Southern Pacific Co.*, 212 Cal. 540–561 [299 Pac. 529].) Defendants sought to overcome and dispel this presumption by evidence that decedent had violated section 150½ of the California Vehicle Act. The mere violation of the provisions of the act would not be sufficient to controvert and overcome the presumption, but there must be evidence to the effect that the act or omission constituting the violation proximately contributed to the accident. ▮ The violation of a statute or ordinance which proximately contributes to the injuries is presumptively an act of negligence unless the act or omission was justifiable or excusable under the circumstances. (*Mora* v. *Favilla*, 186 Cal. 199–207 [199 Pac. 17] ; Shearman & Redfield on Negligence, 6th ed., sec. 467.) Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether the violation was excusable or justifiable are questions of fact except in a case where '' . . . the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury''. (*Flores* v. *Fitzgerald*, 204 Cal. 374, 376 [268 Pac. 369, 370].)

▮ The cold record in type in this case fails to disclose any explanation of the violation of the statute in walking along the right-hand side of the highway unless it be in the fact that the north side of the shoulder was three feet wider than the south shoulder, and we are not prepared to say that this fact standing alone would be sufficient to excuse the violation of the law by decedent. There was evidence that others had used this highway for the purpose of going to and returning from neighborhood canneries, and no doubt used the

shoulders of the road, but the standard of care required, even of a minor, cannot be measured by examples that others have violated the law, thereby excusing the act of decedent in committing a like violation. The responsibility of the decedent was a question to be determined by the jury from all the facts and circumstances of the case. In *Barrett* v. *Harman,* 115 Cal. App. 283, 286 [1 Pac. (2d) 458], the court said: "There is no precise age at which as a matter of law a child is to be held accountable for his actions to the same extent as one of full age, and the question as to the capacity of a child at a particular time to exercise care to avoid a particular danger is one of fact for the jury. (*Cahill* v. *E. B. & A. L. Stone Co.,* 167 Cal. 126 [138 Pac. 712].)"

Appellants presented evidence upon the theory that the highway embraced the entire width of the street. The position of the respondent was that the width of the highway was confined to the paved portion of the road, and the trial judge adopted and upheld this latter contention. Respondent's claim that decedent had a legal privilege to walk upon the right-hand side of the shoulder of the highway is untenable. Upon a second trial respondent may submit evidence, if any exists, justifying and excusing decedent's violation of the law. On appeal any decision may be made in a case that its proper disposition requires. We do not believe that on this appeal an order should be made directing that judgment should be entered in favor of defendants. We are not prepared to say from the record as it stands that the negligence of the decedent was contributory negligence as a matter of law. The purpose of section 4½ of article VI of the Constitution is to mitigate the possibility of a miscarriage of justice.

The judgment is reversed.

Knight, Acting, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 25, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 24, 1936.