[Civ. No. 15799. First Dist., Div. One. Apr. 1, 1954.]

GERALD ALDERSON et al., Appellants, v. COUNTY OF SANTA CLARA et al., Respondents.

DOROTHY ALDERSON, Appellant, v. COUNTY OF SANTA CLARA et al., Respondents.

Rankin, Oneal, Luckhardt, Center & Hall and J. E. Longinotti for Appellants.

Howard W. Campen, County Counsel (Santa Clara), Donald K. Currlin, Assistant County Counsel, and Spencer M. Williams, Deputy County Counsel, for Respondent.

BRAY, J.—Two actions against the defendant county of Santa Clara were consolidated for trial. One action is by the minors Gerald and Jack Alderson through their guardian *ad litem* Phyllis Alderson, their mother, for injuries received by them, and by Phyllis Alderson for hospital fees, etc., paid by her for their care and treatment. The other action is by Dorothy Alderson against the county for her injuries. A jury trial was commenced but at the end of plaintiffs' cases, defendant was granted nonsuits in both cases. From the judgments after denial of motions for new trial thereon, all plaintiffs appeal.

## QUESTIONS PRESENTED

1. Is a county's liability for a dangerous and defective condition limited to the improved portion of a roadway? 2. Was plaintiff Dorothy Alderson guilty of contributory negligence as a matter of law? 3. Did the claim filed by the minors cover plaintiff Phyllis Alderson's cause of action?

### EVIDENCE

The actions were based upon the contention that defendant county knowingly maintained Redmond Road, a public highway of the county of Santa Clara, in a dangerous and defective condition in that it permitted rocks and boulders to stand on the north shoulder hidden in a growth of tall weeds, and in that it permitted said shoulder to become hollowed by deep depressions and to become improperly graded, constituting a hazard to vehicles using it. There is practically no dispute as to the facts. One Sunday morning plaintiff Dorothy Alderson drove an automobile along Redmond Road. Riding with her were plaintiffs Gerald Alderson, age 4, and Jack Alderson, age 2. At the point of the accident Redmond Road is generally straight and level. The asphaltic pavement varied slightly as to width, being from 15 feet 10 inches to 16 feet. The county right of way is 40 feet wide. The car was 6 feet 2 inches wide. In front of the Cecala property there is a graveled driveway or entrance to that property. This extends from the asphaltic pavement 10 to 12 feet to the property line, and is about the height of the paved portion of the roadway. The west border of this driveway (the near side as Dorothy Alderson approached it) is outlined by rocks extending from a point 8 to 10 inches from the north edge of the pavement into the Cecala property.* These rocks are imbedded in the ground and stand 5 to 7 inches above the surface of the driveway. Approaching the driveway there was grass 12 to 20 inches in height at the north edge of the pavement obscuring to some extent the bank leading down from the pavement to the orchard level. Grass was growing also between the rocks bordering the driveway, obscuring the rocks. Dorothy did not see these rocks as she approached although she did see the grass. The general width of the shoulders of Redmond Road was 4 feet. However, where the car left the pavement there was very little, if any, level shoulder. There was a rut or drop-off 2 to 3 inches in depth at the north edge of the pavement and then the ground sloped off at about a 45 degree angle for a distance of 3 or 4 feet to the orchard level which was from 18 to 20 inches below the pavement level.

As Dorothy proceeded along Redmond Road she observed another vehicle approaching from the opposite direction. As

---

*It should be noted that these rocks are on the very edge of the driveway into the Cecala property and hence do not form an obstruction to one making the turn from the pavement into the driveway.

the cars drew closer together she gradually pulled over to the right hand side of the pavement. When the cars were but a short distance apart she judged that there was not sufficient space on the pavement for the two cars to pass (although she testified that at no time did the approaching car come on her half of the pavement, its left wheels being near the middle of the pavement). It was approaching at a reasonable speed. She was going approximately 30 to 35 miles per hour. Her right front wheel left the pavement, dropping 2 to 3 inches. It pulled the car to the right. The car proceeded about a car's length while off the pavement and then either the right front wheel or some part of the right front struck with a terrific jolt the rock at the east edge of the driveway 8 to 10 inches from the pavement. The automobile bounced into the air, crossed the driveway, turned slightly north and then struck head on into a tree which stood about 100 feet from the east line of the driveway and about 20 feet from the north edge of Redmond Road. All in the car were injured. Knowledge by the county of the condition of the roadway was not an issue.

1. *County's Duty.*

The situation was one where the county maintained only the paved portion of the highway (and some shoulder) and permitted rocks obscured by grass to remain on the right of way within 10 to 12 inches of the pavement. This could constitute a dangerous or defective condition to which Government Code, sections 53051 and 53052, would apply, if the county is under any duty concerning the area outside the improved portion of the highway.

There is a conflict in the authorities as to the width of the highway, to which the duty of the county to use reasonable care to keep safe extends. (See McQuillin, Municipal Corporations, vol. 19, § 54.34; *Dillingham* v. *Department of Highways,* —— Ky. —— [253 S.W.2d 256].) There are cases to the effect that the public agency is not required to maintain the shoulders of a highway. (See 80 A.L.R. 494.) █ This rule, however, does not apply in California, where it seems now fairly well established that a county would be liable for defects in the shoulders provided that the shoulders were customarily traveled. See the following cases for the rule that the county is required to maintain the customarily traveled portions of the highway: *Prescott* v. *City of Orange,* 56 Cal.App.2d 144 [132 P.2d 523]; *Murphy* v. *County of*

*Lake,* 106 Cal.App.2d 61 [234 P.2d 712] ; *Anderson* v. *County of San Joaquin,* 110 Cal.App.2d 703 [244 P.2d 75].

However, in our case there was no evidence that the shoulder where the accident occurred was customarily traveled. The question here is whether the county was under any duty to maintain the portion of the shoulder in close proximity to the pavement free from obstructions not visible because of the tall grass. Volume 25, American Jurisprudence, section 526, page 807, discusses the situation. "There is considerable conflict of authority as to the liability of municipal and quasi-municipal corporations for injuries sustained by travelers as a result of defects and obstructions within the limits of a street or highway, but outside the traveled or improved portion thereof. They are, however, generally held to be liable for injuries resulting from such defects or obstructions where they are in such proximity to, or so connected with, the traveled portion of the way as to render it unsafe to those traveling thereon, or where the danger is hidden, and the defect or obstruction amounts to a trap or a snare. A number of cases lay down the rule that it is the duty of the traveler to remain within the wrought and traveled portion of the way, and that the corporation is not liable for injuries sustained by him if he departs therefrom voluntarily and without good cause, or for some independent purpose. Such rule of nonliability has been applied in a number of instances in the case of injuries resulting from the collision of vehicular traffic with defects or obstructions within a park strip or parkway within the limits of the street or highway. Furthermore, the view has been taken that *where there is no hidden danger, or any peculiar situation which renders the construction dangerous,* one who mistakenly leaves or, by some emergency, is formed [forced] from the beaten track cannot recover. . . . On the other hand, there is authority to the effect that although the public authorities are not obliged to prepare the highway for travel to its full width, and although only a portion of its width has been so prepared, the public, nevertheless, has a right to travel over the whole width of the way as laid out, without being subjected to other or greater dangers than may be presented by natural obstacles, or those occasioned by making and repairing the traveled path, and that it is not necessarily a good defense to a claim for damages that they were incurred by reason of an obstruction upon the margin of the way. This line of authorities takes the

view that the corporation still has a right to control the whole width of the highway, is subject to a corresponding duty with respect to it, and must see that those portions outside the traveled track are in such condition that a traveler using due care may pass without danger of accident. . . . With respect to injuries resulting from the condition of the shoulder of a hard-surfaced road, some courts have applied the rule of liability, while others have applied the rule of nonliability upon the theory that the shoulder of a highway is not constructed for the purpose of being traveled over." (Emphasis added.)

██ As the question has not been determined heretofore in this state, it would seem reasonable to apply the above-mentioned rule of liability outside the traveled portion of the highway if the circumstances show that the driver was not negligent in departing from the traveled area, and if the defects or obstructions are in close proximity to the traveled area and are hidden from ordinary view. The trend of the California decisions in this direction is shown by *Dalzell* v. *County of Los Angeles*, 88 Cal.App.2d 271 [198 P.2d 554], and *Murphy* v. *County of Lake, supra*, 106 Cal.App.2d 61. In the Dalzell case the plaintiff drove into an unmarked storm drain off the paved portion of the highway, which apparently was hidden by grass. (It is not clear from the opinion whether the drain was outside the traveled portion of the highway. However, the court several times refers to the fact that the plaintiff was "off the highway.") Although the trial court's finding that the plaintiff was guilty of contributory negligence was upheld, the reviewing court stated that the evidence showed that the storm drain constituted a dangerous or defective condition of the highway. The Murphy case involved a narrow winding mountain road, with a 12-foot pavement and an 18-inch shoulder on the bank side and a 3-foot shoulder on the abrupt drop side. In passing an approaching vehicle the plaintiff's truck went off the shoulder. There was evidence that the type of construction of the shoulder created an inherently dangerous condition. The court said "in view of the narrowness of the road, there can be no question but that the unpaved shoulder necessarily would have to be traveled on by larger vehicles when passing other cars." (P. 67.) In *Scalf* v. *Eicher*, 11 Cal.App.2d 44, 50 [53 P.2d 368], it is held that in many instances a shoulder is necessarily a portion of the highway.

■ As we have shown, a county may be liable for the dangerous or defective condition even though that condition exists off the traveled portion of the highway. Whether the situation requires the application of that rule is a question for the jury. Thus, here, whether a 16-foot pavement in view of the width of cars today (plaintiff's was 6 feet 2 inches) left sufficient width for cars to pass so that the county would be justified in leaving a 2-inch to 3-inch drop at the edge of the pavement and then a shoulder or sloping bank so covered with weeds that one could not see that where it intersected a driveway there were large rocks, was a question for the jury. In *Frates* v. *Ghirardi,* 48 Cal.App.2d 596 [120 P.2d 82], it was held that it was for the jury to determine whether a tow-car parked within the right of way but 8 feet off the paved portion was obstructing " 'a way or place . . . open to the use of the public for purposes of vehicular travel' " as referred to in section 586.5, Vehicle Code. As said in *Rafferty* v. *City of Marysville,* 207 Cal. 657 [280 P. 118], concerning cases based upon the public liability statutes, "Each case must depend upon its own state of facts, and so varying are the factors which contribute to produce a result that no hard-and-fast rule may find practical application in the great majority of cases." (P. 661.)

"The question of whether or not a condition in a public street is actually dangerous and a menace to the safety of the traveling public is usually one of fact which is addressed to the triers of facts." (*Bigelow* v. *City of Ontario,* 37 Cal. App.2d 198, 240 [99 P.2d 298] ; to the same effect, *Murphy* v. *County of Lake, supra,* 106 Cal.App.2d 61, 67 ; *Rowland* v. *City of Pomona,* 82 Cal.App.2d 622 [186 P.2d 447].)

In *Sher* v. *State,* 194 Misc. 172 [86 N.Y.S.2d 266], the court said (p. 269 [86 N.Y.S.2d]): "As the Court said in *Hadley* v. *Taylor,* L.R., 1 C.P. 53, 55, in approving damages where the hole was 14 inches from the side of the road 'It is extremely difficult to draw the line between what is and what is not such a proximity to the highway as to constitute an actionable nuisance.' We think it makes no difference here, whether the depression was immediately adjacent to the paved portion of the highway, if it was so situated that a person lawfully and reasonably using the thoroughfare was liable to fall into it. . . . 'The State is obligated to maintain its highways in a safe condition for travel, not only with regard to obstructions and defects in the travelled portion of the road, but also with regard to conditions adjacent to

and above the highway which might reasonably be anticipated to result in injury and damage to the users thereof.' ''

In *Scalf* v. *Eicher, supra*, 11 Cal.App.2d 44, in discussing the portion of the highway available for pedestrians the court refers to *Silvey* v. *Harm*, 120 Cal.App. 561 [8 P.2d 570], which held that the shoulders were not part of the "main traveled portion of a public highway" (p. 51) mentioned in section 136, Vehicle Code, and then points out that "The word 'highway' as used in various statutes and ordinances may have a meaning somewhat different, depending upon the purpose of the provision of the law." (P. 50.) As to cities, "The obligation to exercise reasonable care to keep streets and sidewalks in proper repair is not confined to defects existing within the limits of the public way. Dangerous or unsafe ditches, excavations, walls or obstructions by the side thereof are included within the rule of fixing municipal liability. A city 'must not create or suffer any pitfall within the traveled portion, or so near to it that a traveler upon the portion customarily used for travel may, although in the exercise of due care, fall therein.' '' (McQuillin, Municipal Corporations, vol. 19, 3rd ed., § 54.69, p. 216.)

In *Galiano* v. *Pacific Gas & Elec. Co.*, 20 Cal.App.2d 534, 544 [67 P.2d 388], the court quoted with approval: "In 13 Ruling Case Law, section 311, page 381, the rule as to liability for obstructions outside of the traveled portion, but within the side lines of the highway, is thus stated: 'There seems to be considerable conflict of authority as to the liability of municipal and quasi-municipal corporations for injuries sustained by travelers as a result of defects and obstructions within the limits of a street or highway, but outside the traveled portion thereof. They are, however, generally held to be liable for injuries resulting from such defects or obstructions which are in such proximity to, or so connected with the traveled portion of the way as to render it unsafe to those traveling thereon, or where the danger is hidden and the defect or obstruction amounts to a trap or a snare.' '' (To the same effect, McQuillin, Municipal Corporations, vol. 19, 3rd ed., § 54.34, p. 120.)

"The question as to whether the condition of a public street is dangerous and a menace to those travelling upon it is usually one of fact for the determination of the trier of fact, whose conclusion, if supported by any substantial evidence, will not be disturbed on appeal." (*Barker* v. *City*

*of Los Angeles,* 57 Cal.App.2d 742, 747 [135 P.2d 573]; see also *Prescott* v. *City of Orange, supra,* 56 Cal.App.2d 144.)

### 2. *Contributory Negligence.*

Defendant contends that in driving off the paved portion of the highway Dorothy Alderson was guilty of negligence as a matter of law. In determining whether as a matter of law a person is negligent in driving off a 16-foot pavement, the following language in a case holding the State Highway Commission of Kansas liable for injuries caused by ruts in a dirt shoulder, is significant. ▮ "The present statute contemplates liability for defects in highways improved by hard surfacing, and the liability is not limited to defects in the hard surface, as for example the concrete slab on U. S. 40. There was testimony that the purpose of shoulders is to support the concrete slab, and not to provide a way for travel, which is true in a sense. But a hard-surface highway may be defective because it has no shoulders. Lack of any shoulder for a concrete slab 18 feet wide, 18 inches above the surface, and a mile long, would manifestly render the highway defective for purposes of travel. Of course the slab is intended to be and is the traveled way; *but it is a matter of common knowledge that careful automobile drivers not only may on occasion, but frequently must, use the shoulders to some extent as a part of the highway, and a pitfall in a shoulder, adjoining or even adjacent to the slab, may constitute a defect in the highway.*" (*Collins* v. *State Highway Com.,* 134 Kan. 278 [5 P.2d 1106, 80 A.L.R. 488, 493]; emphasis added.) "It often happens that the driver of a vehicle in an emergency, *or in passing other vehicles,* and while exercising ordinary care for his own safety, leaves for a short distance the usually traveled part of the street, and when he does so, if there is no warning of the danger and the physical appearance outside of the traveled part does not give notice that it is unsafe, he cannot be said to be guilty of such contributory negligence as would defeat a recovery if he is injured by dropping into an excavation or coming in contact with a dangerous obstruction in the margin of the beaten path that could not be discovered by the exercise of ordinary care on his part." (*City of Lancaster* v. *Broaddus,* 186 Ky. 226 [216 S.W. 373, 375]; emphasis added.)

In *Gilly* v. *State,* 202 Misc. 837 [117 N.Y.S.2d 303], it was held that " '. . . the principle that the shoulder of the

highway must be maintained in reasonably safe condition for use when occasion requires' '' (p. 304 [117 N.Y.S.2d]) did not apply to a motorist who while negotiating a curve in the highway drove his automobile on a soft shoulder, causing him to lose control of the car. That situation is far different from the one here. The width of the highway there was not shown and the court particularly pointed out that there was no traffic in either direction at the time ''to cause or require the claimant to leave the pavement.'' (P. 304 [117 N.Y.S.2d].) In our case it was for the jury to determine whether the approaching of another vehicle on the narrow highway caused plaintiff reasonably to leave the pavement. This is so even though in actual fact there was room for the two cars to pass on the pavement.

3. *Plaintiff Phyllis Alderson's Cause of Action.*

While a claim on behalf of the minors was filed with defendant in accordance with section 53052, Government Code, no separate claim was filed on behalf of Phyllis Alderson for medical expenses incurred in behalf of the minors on which her cause of action was based. No right of action exists without such claim. (*Norton* v. *City of Pomona,* 5 Cal. 2d 54 [53 P.2d 952]; *Thompson* v. *County of Los Angeles,* 140 Cal.App. 73 [35 P.2d 185].) Because such claim was not filed plaintiff Phyllis was properly nonsuited (*Gapin* v. *City of Los Angeles,* 34 Cal.App.2d 660 [94 P.2d 359]) unless, as claimed by plaintiff, her claim is an integral part of the claim filed by her on behalf of the minors for general damages. Plaintiff relies on *Kelso* v. *Board of Education,* 42 Cal.App.2d 415 [109 P.2d 29]. There a claim was filed by the father setting forth the accident to the son, the loss of his eye, and then the statement ''claim is hereby made for Twenty-five Thousand dollars ($25,000.00) as damages for the loss of an eye by said'' son. It was verified by the father. The court held (p. 421) that the ''claim itself shows clearly enough that the son is the claimant'' and not the father, and that it was a substantial compliance with the statute requiring a claim. In *Sullivan* v. *City & County of San Francisco,* 95 Cal.App.2d 745 [214 P.2d 82], the claim filed with the city was for $50,000 damages. After suit was filed the court permitted the plaintiff to amend his complaint increasing his demand to $150,000. The city contended that the plaintiff was limited to the amount of the claim filed

with it. We held that the amount of damages set forth in a claim does not necessarily limit the amount recoverable in an action to enforce the claim; that there was a substantial compliance with the claim statute even though the amount was less than that demanded in the action.

In recent years the interpretation of the claim statute has been greatly liberalized. (See cases cited in *Sullivan* v. *City & County of San Francisco, supra,* 95 Cal.App.2d 745, 764.) As said in *Kelso* v. *Board of Education, supra,* 42 Cal.App. 2d 415, the purpose of requiring the filing of a claim "as a condition precedent to bringing a suit against public entities, boards, commissions, etc., is simply to enable such public officials to make a proper investigation concerning the merits of the claim and to settle it without the expense of a lawsuit, if settlement should be shown to be proper." (P. 421.)

■ In our case, while no claim for special damages was filed by the mother and none could have been filed on behalf of the minors unless the minors actually incurred or paid such special damages, defendant received from Phyllis as mother of the minors full notice of the accident, the persons injured therein, and the fact that damages were claimed. Paraphrasing the language of the Kelso case (p. 421), "It would strain one's imagination to suppose" that the defendant would not know that minors suffering injuries to the extent set forth in the claim would have required medical and hospital attention. Again using the Kelso case language, "It is at once apparent that before the defendants could determine the presence or absence of any liability upon their part to the . . . [injured boys' mother], they would of necessity have to determine the existence of any primary liability to the injured minor." (P. 421.) If defendant owed the minors no obligation, then of course there would be no obligation to the mother for the moneys paid out in their behalf. If it did owe the minors an obligation then the mother's claim for those moneys logically would seem to be an integral part of their claim to be compensated "for all the detriment proximately caused" by the defendant's tort. (Civ. Code, § 3333.) Defendant could not possibly be injured by the failure to file a claim for medical, etc., expenses in a matter so closely related to the claim filed and the persons for whom the claim was filed. ". . . literal compliance with the claim statute is not required—substantial compliance is sufficient." (*Sullivan* v. *City & County of San Francisco, supra,* 95 Cal. App.2d 745, 764.) Because of the close relationship of the

parties and the subject matter of their causes of action, we are constrained to hold that there was a substantial compliance with the claim statute.

The judgments are reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 30, 1954, and respondent's petition for a hearing by the Supreme Court was denied May 27, 1954.